## MOE v. MOE, appellant.

*Divorce. Conflict of law. Judgment obtained in another state against a non-resident.*

Plaintiff and T., her husband, lived in Massachusetts. She left him and went to Vermont, where she obtained a divorce upon the ground of his abandonment of her. In that action, personal service of some of the papers was admitted by T., who waived all objections to the service, and the judgment was obtained by default. Plaintiff then married defendant in this State. In an action against defendant for divorce, defendant set up that plaintiff was still the wife of T. *Held* (following *Holmes* v. *Holmes*, 4 Lans. 388), that the cause of action against T. not having arisen in Vermont, or while the parties resided there, and the service on T. not being in that State, its courts had no jurisdiction to annul the marriage between plaintiff and T., and the decree to that effect was therefore a nullity.

APPEAL from a judgment in favor of plaintiff, entered on the report of a referee.

The action is for divorce *a vinculo*, for adultery alleged to have been committed in May, 1868.

Plaintiff was married to one Thurston, who is still living, at Lowell, Massachusetts, in 1850. They resided for several years thereafter in Massachusetts, then removed to Vermont, where they lived for a year or two; then, in May, 1854, returned to Fitchburg, Massachusetts, where they continued to live together until April, 1856, when the plaintiff left Thurston and went back to Vermont. Thurston has since continued to reside in Massachusetts. In 1859 plaintiff, in the courts of Vermont, obtained a divorce from Thurston upon the ground of his abandonment of her. The papers, or some of them, were personally served upon Thurston, at Fitchburg, Massachusetts, and he in writing accepted legal service thereof, and waived all objections to the service. In November, 1862, plaintiff married the defendant in this State. At the commencement of this action, and since, the defendant was and has been living with a woman, other than plaintiff, as her husband.

Plaintiff now brings action for that cause. Defendant answers, setting up plaintiff's former marriage with Thurston, and that he is still living, thus nullifying the pretended marriage between the parties in this action.

Upon the trial plaintiff offered in evidence the Vermont decree of divorce, which was received under objection, and upon the faith thereof the referee decided that the marriage between these parties in 1862 was valid, and that the plaintiff is entitled to a decree for a divorce from the defendant and judgment is so entered.

*Edward C. James*, for appellant.

*G. S. Adams*, for respondent.

BOARDMAN, J. In the case of *Holmes* v. *Holmes*, 4 Lans. 388 (as to facts more fully reported in 57 Barb. 305), the parties were married in this State, and for some time continued to reside here. The plaintiff then left his wife in this State and went to Iowa. While there he brought an action for divorce against his wife on account of cruel and inhuman treatment and desertion by the defendant toward the plaintiff. Due notice of the proceedings, in accordance with the laws of Iowa, were personally served on defendant in this State, who did not appear, but suffered a default, and upon the pleadings and proofs of plaintiff a decree of absolute divorce was entered in favor of the plaintiff against the defendant.

The defendant, after such decree, married again in this State, whereupon the plaintiff returned to this State and brought his action of divorce for adultery against defendant. She set up by answer the decree obtained by her husband in Iowa, as above stated, and alleged the necessary jurisdictional facts, except service being out of the State, upon a non-resident defendant, and further alleged that said decree, by the laws of Iowa then and there and at all times since, was legal, valid and effectual, that thereby the marriage contract had been annulled, and the defendant was restored thereby to the rights of an unmarried woman, including the right to marry again.

The plaintiff demurred to the answer that it did not state facts sufficient to constitute a defense, thereby admitting all the facts set up in the answer.

The general term of this department in December, 1871, held such demurrer well taken, and that the decree was not valid here for any purpose, and, as a consequence, that the husband, who had obtained the decree in Iowa, was not bound by it nor estopped from maintaining the action in this State against the wife who had remarried upon the faith of such decree.

Upon a careful reading of the opinion of Mr. Justice PARKER, I am unable to see why his reasoning does not apply in all respects to this case with much greater force.

The cause of action in both cases arose out of the State attempting to exercise jurisdiction, while the parties to such actions were residing out of such State. In each the plaintiff leaves the defendant and goes to another State and procures a divorce under the laws of such State upon personal service upon the defendant of notice of proceedings, out of the State. In *Holmes* v. *Holmes*, the alleged offense for which the divorce was granted was not a cause for absolute divorce in this State, where the parties at the time of such offense resided. In the case at bar, it does not appear whether desertion was a cause for absolute divorce in or prior to 1859 in the State of Massachusetts. In the former case, the service outside of the State of notice stood conceded in its broadest sense; in the latter, while service of *a* notice is admitted, the sufficiency of such notice under the laws of Vermont is denied. Both were cases of judgment by default, no appearance being had by either defendant. There is as much cause for doubting the *bona fides* of the residence of the plaintiff in one case as the other.

" On no principle," says Judge PARKER, " can the courts of Iowa be said to have jurisdiction of the subject-matter. Jurisdiction of the subject-matter must, of course, exist at the time of the commission of the offense or not at all. The law of the place of domicile at the time of the commission of the offense * * will control. Every State has the right to dissolve the marriage relation of all its domiciled inhabitants *for causes occurring while such domicile continues."* The learned judge, therefore, concludes that " the courts of Iowa * * * acquired no jurisdiction of the subject-matter of the action."

Upon the insufficiency of the service of notice, the opinion is equally clear and conclusive. To give jurisdiction of the party (p. 392), " service of process can only be made within the territorial jurisdiction of the court * * the process of the court cannot run into the territory of another government." The service in that case " gave no jurisdiction of the person of the defendant, for as appears, both upon principle and authority, such service out of the State is a nullity." *Todd* v. *Kerr*, 42 Barb. 317.

The case of *Holmes* v. *Holmes* is therefore conclusive, and the referee erred in giving force and effect to the decree of the Vermont

court as evidence of the dissolution of the marriage contract between plaintiff and Thurston, and of the right of the plaintiff to marry again. See, also, *Kerr* v. *Kerr*, 41 N. Y. 272; *McGiffert* v. *McGiffert*, 31 Barb. 69; *Vischer* v. *Vischer*, 12 id. 640; *Borden* v. *Fitch*, 15 Johns. 141; *Dunn* v. *Dunn*, 4 Paige, 425; 2 Bish. on Mar. & Div., § 156 (731) 4th ed., *et seq.*

Besides the considerations above noted, it is quite probable, from the evidence in this case, that the Vermont decree was void for fraud in that the alleged desertion of plaintiff by Thurston was not true, in fact, and if true, did not occur in the State of Vermont, so as to give jurisdiction of the subject-matter. *Vischer* v. *Vischer*, *ante.*

However that may be, the judgment must be reversed and a new trial granted.

*Judgment accordingly.*