Rumsey, J.
The facts in this case which were in dispute have been found by a jury, and as so found they must be taken as true.
In addition to those facts, it appears by necessary inference from them that the defendant ceased to be a resident of Michigan in October, 1875, and that he was a resident of this State in September, 1877, at the time of his marriage with the plaintiff. It was admitted on the trial, and at the argument of the motion for judgment. that the defendant in fact came to reside in. *330 Ontario county shortly after October, 1875, and in time to qualify himself for voting in this State in November, 1876. It was also admitted that the statutes of Michigan require that the party exhibiting his bill of complaint in an action for divorce shall have been a resident of that State for one year immediately preceding the time of exhibiting such bill, and that the laws of that State under which the defendant’s divorce was granted, authorize the court of chancery to grant an absolute divorce when the wife shall desert the husband for a term of two years. It was for such desertion that defendant procured his divorce.
The only question is whether that divorce was valid in this State.
In 1857, Jonathan C. Mellen and Augusta E. Baker were married. They lived together as man and wife in Ontario county, N. Y., until October 31, 1871, when they separated. Augusta continued to live in New York State, and has never since been out of it, and was never in the State of Michigan. In June, 1874, defendant became a resident of the State of Michigan, and lived there until October, 1875, in all about sixteen months. In June, 1875, after he had been in that State a year, he commenced an action in the circuit court of Branch county, Michigan, to obtain a decree of divorce from Augusta, upon the ground that said Augusta had deserted him for more than two years.
Mrs. Augusta Mellen being in New York State, service was had upon her as a non-resident, under the practice of Michigan. She had no actual notice of the pendency of the action against her ; nor did she ever appear in it. A decree of divorce was granted to Mellen in that action on May 8, 1876, at which time neither he nor his wife were residents of Michigan.
The jury find as a fact that Mrs. Augusta Mellen did not desert the defendant for more than two years before this divorce was obtained.
*331 The counsel for the defendant insists that when Mellen went to Michigan and obtained a domicil, his wife became also a domiciled resident of Michigan, because the domicil of the husband is prima facie that of the wife, and any change of the domicil of the husband in contemplation of law carries with it the domicil of the wife. I may remark here that the finding of the jury does not necessarily say that the defendant was ever domiciled in Michigan. A man does not acquire a domicil in any place simply by residing there. He must also have the intention of making it his permanent home (Abbotts Law Die., tit. “Domicil ”). The facts found in this case by no means show any such intention on the part of Mellen, but rather negative it. I do not think, however, that it is very material in this case, in view of the decisions of our courts, whether Mellen was domiciled in Michigan for the sixteen months of his residence there, or not. It is quite true that prima facie the domicil of the wife is the same as that of the husband. But the law recognizes exceptions to this rule, the foundation of which is the necessity for her protection, and the fact that their interests have ceased to be identical (Hunt v. Hunt, 72 N. Y. 217; 2 Bish. on Mar. and Div. §§ 124-128). In this case the joint domicil of Mellen and his wife Augusta was in the State of New York. They were living apart, not by her fault, as the jury found.
When the husband began his action to dissolve the marriage contract, the theoretic identity of person and interest ceased to exist, and the legal fiction of the one domicil no longer operated. The rights of the parties and the jurisdiction of the court must then stand upon the actual existing fact as it was. This, I think, is the necessary result of the cases (2 Bishop on Mar. & Div. §§ 124-127; 3 Am. Law Reg. 221, 222; Rogers on Domicil, 11 Cent. L. J. 421; Hunt v. Hunt, supra; *332 Elder v. Reel, 1 Am. R. 414; Cox v. Cox, 2 Am. R. 415; 19 Ohio St. 502; Kinnier v. Kinnier, 45 N. Y. 535, 544, per Church, Ch. J.; People v. Dowell, 12 Am. R. 260-272). The rule I suggest is the one acted upon in McGiffert v. McGiffert (31 Barb. 69); Holmes v. Holmes (57 Barb. 305; S. C., 4 Lans. 388), and Shaw v. Shaw (98 Mass. 158). In the two cases first cited the facts were' quite- like the case at bar, and if the domicil of the wife was changed by the removal of the husband, and followed such removal, the decision in those cases must have been different from what it was.
The English law on this subject appears to be the same as ours (Briggs v. Briggs, L. R. 5 P. D. 163; Le Sucur v. Le Secur, L. R. 1 P. D. 139). The case of Hunt v. Hunt (supra) is not in conflict. In that case the fact was, that the wife was, when the divorce was obtained against her, an actual domiciled citizen of the State of Louisiana, and only temporarily absent therefrom. The proceedings were such as the Louisiana law required to enable the courts of that State to get jurisdiction of its absent citizens. The divorce then obtained was sustained here, because both parties were actually citizens of Louisiana and subject to her laws (People v. Baker, 76 N. Y. 78, 83). In Harvey v. Farnie (L. R. 5 P. D. 153; S. C., on appeal, L. R. 6 P. D. 35; 23 Alb. L. J.), both parties were actually domiciled in Scotland when the courts of that country granted the divorce which was held valid.
Mrs. Augusta Mellen was not then within the jurisdiction of the Michigan court when the action was commenced against her for a divorce. There was no service on her, nor was she in any way subject to the jurisdiction of that court. She had not, as the jury found, deserted her husband. If she had, there could still have been no cause of action for that reason in Michigan until the desertion had continued for two years. The case is precisely within the cases of McGiffert v. *333 McGiffert (31 Barb. 69), and Vischer v. Vischer (12 Id. 640). These are both special term cases, it is true, bub they have been frequently followed in this State (Hoffman v. Hoffman, 55 Barb. 269; Holmes v. Holmes, 4 Lans. 388; Moe v. Moe, 2 Supm. Ct. [T. & C.] 647), and have finally and decisively been adopted by the court of appeals (People v. Baker, 76 N. Y. 78, 82, 83). The rule of these cases compels me to hold that the Michigan divorce was not valid or operative as against Mrs. Augusta Mellen, and that in this State it is of no force. It follows that the marriage with the plaintiff was void, and judgment to that effect must be entered.
Note on Domicil fob Pubpose op Divobce.
Jurisdiction as affected Try domicil.]—The main principle controlling the jurisdiction in divorce is that to obtain a decree which will be respected by the tribunals beyond the limits of the State where it is granted, it should be sought in the courts of the State where the married pair had their domicil. The union of husband and wife legally involves unity of domicil; and the residence and intention of the husband necessarily fixes the domicil of the wife as well as his own. Marriage being in contemplation of the law a status (Ditson v. Ditson, 4 R. I. 87), the State within whose limits the parties have their domicil is the one having power to dissolve the relation.
The husband may bring his action in the courts of that State, and the departure or concealment of the wife cannot prevent the courts of that State from acquiring jurisdiction of her person, by constructive service. Hunt v. Hunt, 72 N. Y. 217; contra, Irby v. Wilson, 1 Dev. & B. Eq. 568, unsound.
But after grievance arisen, he cannot, by acquiring a domicil in another State without her, invoke the process of its courts against her by constructive service. Vischer v. Vischer, 12 Barb. 640; Colvin v. Read, 55 Penn. St. (5 Smith), 375. Compare Burlen v. Shannon, 115 Mass. 438.
The wife may sue in the State of the common marital domicil, and her husband cannot, by removing to another jurisdiction and obtaining another domicil there after the cause of action has arisen or originated, divest the wife of her claim to the benefit of the common marital domicil, and compel her to sue him at his new domicil. Har *334 teau v. Harteau, 14 Pick. 181; Turner v. Turner, 44 Ala. 437; Sewall v. Sewall, 122 Mass. 156; Hopkins v. Hopkins, 35 N. H. 474; Vischer v. Vischer, 12 Barb. 640; Moffatt v. Moffatt, 5 Cal. 280.
It may be observed here that the maxim that the domicil of the wife follows that of the husband, is founded upon the theoretic identity of their person and interests (Harteau v. Harteau, 14 Pick. 181, Shaw, Ch. J.), and is a fiction of law which is allowed to control, when necessary to give the injured wife recourse to the law, but not when it would deprive her of its protection. Harteau v. Harteau (above); Turner v. Turner, 44 Ala. 437; Harding v. Alden, 9 Greenl. (Me.) 140; Frary v. Frary, 10 N. H. 61; Hanberry v. Hanberry, 29 Ala. 719; Craven v. Craven, 27 Wisc. 418. It is “a mere fiction which is never allowed to defeat justice ” (Irby v. Wilson, 1 Dev. & B. 568); nor to destroy a right by allowing him to fix upon her a-new domicil after cause of action arisen. Colvin v. Reed, 55 Penn. St. (5 Smith), 375.
Whether his taking a new domicil without her entitles her to invoke the fiction that her domicil follows his, and sue there, is not settled (compare Kashaw v. Kashaw, 3 Cal. 312; negative, Hopkins v. Hopkins, 35 N. H. 474). She does not lose the marital domicil so as to defeat her action in that jurisdiction (Masten v. Masten, 15 N. H. 159; Maguire v. Maguire, 7 Dana, 181; Kashaw v. Kashaw, 3 Cal. 312), at least while he remains domiciled there (Sewall v. Sewall, 122 Mass. 156), by parting from him in the emergency of the grievance which constitutes her cause of action, even though she is going for sojourn to a place without the jurisdiction.
It is held that a change of residence owing to domestic troubles, even though made by a man, is not necessarily a change of domicil. So held of domicil under the law of succession. Hayes v. Hayes, 74 Ill. 312.
And if her removal is alleged against her as a change of domicil the burden of proof rests upon the party making the allegation. Desmare v. United States, 93 U. S. (3 Otto) 605.
She may, after grievance, establish a separate domicil, and having done so in good faith, may bring her action there. Cheever v. Wilson, 9 Wall. 108; Ditson v. Ditson, 4 R. I. 87; Harding v. Alden, 9 Greenl. (Me.) 140; Hanberry v. Hanberry, 29 Ala. 719; Frary v. Frary, 10 N. H. 61; Payson v. Payson, 34 Id. 518; and see Kinnier v. Kinnier, 45 N. Y. 535, 544; contra, Maguire v. Maguire, 7 Dana, 181; and see Harteau v. Harteau, 14 Pick. 181.
But in such case, if he is not personally served and does not appear, the divorce will not be valid beyond the bounds of the State where it *335 is granted. This is the New York rule. People v. Baker, 76 N. Y. 78, reviewing cases, and rev’g 15 Sun, 256.
The removal to another State may be shown to have been for the purpose of evading the law of the marital domicil which would not allow the divorce, and this lets in, at least in the courts of the marital domicil, evidence that there was no bona fide residence or domicil in the foreign jurisdiction, even though this contradict the recitals in the record. Hoffman v. Hoffman, 46 N. Y. 30; Jackson v. Jackson, 1 Johns. 424, as limited by Kinnier v. Kinnier, 45 N. Y. 535, 540. In the latter case it was held that if the party was actually in the foreign jurisdiction, and the question whether he or she was a resident, so as to give the court jurisdiction, was presented and determined by the court there, the decree cannot, in a State whose law was not evaded, be impeached collaterally for error on this point.
It is held too that evidence that the parties were domiciled and resided here, and that defendant never authorized an appearance, is competent to'show that the court of another State never had jurisdiction, although its records recite residence of the plaintiff, and appearance by attorney for defendant. Kerr v. Kerr, 41 N. Y. 275.
These cases indicated, in more detail, are as follows:
The domicil of the wife does not change with that of the husband when they are living separate under a judicial decree. And where the husband has moved to another State, a divorce obtained by him there without personal service of process upon the wife is void. Vischer v. Vischer, 12 Barb. 640.
Where a husband deserts his wife, his desertion entitles her to her own domicil, and she may obtain a divorce for abandonment in the place of the marifal domicil. Moffatt v. Moffatt, 5 Cal. 280.
Where a husband and wife have parted under such circumstances as gives him no right to complain of her absence, she is entitled to claim a domicil in the State where he resides by virtue of his residence, and may obtain a divorce there. Masten v. Masten, 15 N. H. 159.
When the husband abandons his wife the necessity of a separate existence gives her a separate domicil, and when he goes to another State her domicil does not change, and she cannot obtain a divorce there when the statute requires the plaintiff to be domiciled in the State. Hopkins v. Hopkins, 35 N. H. 474.
A wife may acquire a separate domicil whenever it is necessary or proper that she should do so, and may institute proceedings for divorce in her domicil. So held where she in good faith took up her residence in another State. Cheever v. Wilson, 9 Wall. 108.
*336 On an application for divorce by a wife who had left her husband, who resided and was domiciled in another State, on the ground of cruelty,—Held, without deciding whether the legislature might not disregard the laws of comity and dissolve the marriage within the limits of the State and so far as its citizens were concerned, that a statute conferring on courts the power to grant divorces for certain enumerated causes did not apply where the husband was not a citizen or a domiciled resident, as marriage being an organic institution in every civilized nation, no sovereignty could preserve its own social order if another sovereignty could disturb the domestic relations of its citizens. The domicil of the wife is that of the husband, and although she may have had good cause for leaving him, and may have changed her actual residence, yet her legal domicil remains unchanged. Maguire v. Maguire, 7 Dana, 181.
The general rule that the wife is regarded as having her husband’s domicil, results from his marital rights, and if he has forfeited them and deserted the wife, they may have different domicils! If after she is deserted the wife finds it convenient to change her residence to another State, she becomes entitled to the protection of its laws, and it is not necessary that the abandoned wife should seek the new domicil of the husband in order to obtain a divorce. Thus, where a husband deserted his wife in Massachusetts and went to North Carolina, and the wife subsequently went to Rhode Island, where she obtained a divorce,—Held, that the divorce was valid and would be acknowledged in Massachusetts. Harding v. Alden, 9 Greenl. (Me.) 140.
A wife left her husband and came into the State. She then offered to return to him, but he refused to allow her. She then applied for divorce in the State of her residence.—Held, that after the occurrence of an adequate cause of divorce, the wife must, for the purpose of obtaining the divorce, be allowed to acquire a distinct domicil from her husband in the State where she is living at the time of the commission of the act. When a wife has been abandoned by her husband, their presumed identity becomes a fiction founded on no adequate reason and inconsistent with humanity. Hanberry v. Hanberry, 39 Ala. 719.
Although as a general doctrine the domicil of the. husband is, by law, that of the wife, yet, when he commits an offense entitling her to the dissolution of the relation, she may acquire a different domicil. So held where the husband had deserted the wife. Ditson v. Ditson, 4 R. I. 87.
Where a wife married in New Hampshire and originally residing *337 there is afterwards domiciled with her husband in New York and deserted by him there, and is obliged to return to her friends in New Hampshire, she is entitled to the protection of its laws, and for a subsequent violation of the marriage vows she is entitled to a divorce, although the husband is domiciled elsewhere, as her residence in New York has terminated. Frary v. Frary, 10 N. H. 61.
Where a xvife is deserted in another State and in good faith changes her residence to this State, she may obtain a divorce here for abandonment and refusal to cohabit. Payson v. Payson, 34 N. H. 518.
Under an act providing that divorce suits should be tried in the county xvhere the parties live, the word “ live ” means where the parties have their domicil when the suit is brought.
It seems that the maxim that the domicil of the wife follows that of her husband is founded upon the theoretic identity of their person and interests, and that where the object of a proceeding is to dissolve the relation and establish separate interests, the law will recognize her separate existence, so that a change of domicil of the husband will not be allowed to oust the courts of the State of jurisdiction and to deprive the injured wife of the protection of its laxvs and her right to a divorce. But if the offense is committed in another State while the parties are domiciled there, and the wife then comes to this State, its courts have not such jurisdiction of the parties and their relation as to dissolve the relation, especially where the offense is not a ground of divorce in the other State. Thus, xvhere a husband deserted his xvife in New York, they being domiciled there, and she returned to her friends in Massachusetts, the courts refused to grant a divorce. Harteau v. Harteau, 14 Pick. 181.
Where a husband has left the wife and gone to another State, the necessity of the xvife for her protection to sue for a divorce in her own domicil overrides the technical rule that his domicil is hers. Turner v. Turner, 44 Ala. 437.
The question in the case was the validity of a foreign divorce granted on the husband’s application after the wife had left the State granting it, and where she xvas only served by publication.
The divorce is void because it is not an adjudication between any parties, since the wife did not appear, was not a subject of the State granting it and not amenable to its tribunals. Every person is entitled to an opportunity to be beard, and the service by publication is not sufficient, as a State cannot enact laws to operate on persons not within its territory. Any citizen is free to remove from one State to another. Although the domicil of a wife living in another State from *338 her husband may for some purposes be deemed to be where he is, yet for the purpose of jurisdiction over her person and especially in a suit between them, it is where she lives. That his domicil is hers is a mere fiction which is never allowed to defeat justice. Irby v. Wilson, 1 Dev. & B. Eq. 568.
The domicil of a wife will not be changed when she goes to another State, if she goes for tiio purpose of procuring a divorce for a cause which is not a subject of divorce here; and a divorce so obtained will not be enforced in the State of the husband’s domicil, Jackson v. Jackson, 1 Johns. 424.
It is sufficient to give the court jurisdiction of an action by the wife if the husband retains his legal domicil in the State, although the wife may have since their separation resided in another State. Sewall v. Sewall, 122 Mass. 156.
As a married woman has no other domicil than that of her husband, the courts of the State where she is have no jurisdiction to dissolv a marriage contracted in another State where the husband continues to live, for causes originating in the latter State. Neal v. Her Husband, 1 La. An. 315.
On indictment for bigamy it appeared that a husband leaving his wife in one State went to another, where he took up his residence. He there obtained a divorce, of which she had no actual notice, and after-wards remarried and returned to the State where he had left his wife. Held, that the domicil of a husband determines that of the wife, and they cannot be domiciled in different States. Therefore the foreign divorce was valid in the absence of evidence of fraud or tho*t the husband left the State for the purpose of procuring a divorce. Thompson v. State, 28 Ala. 12.
The English law is well stated in the most recent English work on the subject of Divorce, Browne’s Principles and Practice of Divorce and Matrimonial Causes (Lond., 1880). The author says (p. 7), “ The husband’s actual and the wife’s legal domicil are prima facie 'one, wherever the wife may be personally resident (citing Chichester v. Donegal, 1 Add. 5, 10). By marriage the domicil of the husband becomes that of the wife (citing Dalhousie v. M‘Douall, 7 Cl. & F. 817). The domicil of the husband is that of the wife; she cannot acquire a separate domicil for herself, though the husband may have been guilty of such misconduct as would furnish her with a defense to a suit by him for restitution of conjugal rights (citing Yelverton v. Yelverton, 29 L. J. P. M. & A. 34; Whitcombe v. Whitcombe, 2 Curteis, 351).
[Statutes referring to residence, inhabitancy, &c.]—On this subject see the following cases:
*339 The word “residence,” as used in the Iowa statute requiring the applicant for divorce to have been a resident for six months, means “ a legal residence, not an actual residing alone, but such a residence as that when a man leaves it temporarily, or on business, he has an intention of returning to, becomes, and is de facto and de jure, his domicil, his residence.” Thus one coming into the State for the purpose of procuring the divorce, and with no intention of remaining, is not a resident. Hinds v. Hinds, 1 Iowa, 36.
A law requiring a three years’ residence by the party applying for a divorce is not satisfied when the wife applies, by the theory that her domicil follows that of her husband, as that maxim cannot be used to give jurisdiction. Schonwald v. Schonwald, 2 Jones Eq. 367.
The statute of Wisconsin (R. S. c. 11, § 12) vests the jurisdiction of actions for divorce upon the residence of the plaintiff alone, and requires the plaintiff to have resided in the State one year immediately preceding the suit, except when the suit is for adultery committed while the plaintiff is a resident in the State, and when the marriage is solemnized here and plaintiff continues to reside here until suit brought. Dutcher v. Dutcher, 39 Wis. 651.
The rule that the domicil of the wife follows that of the husband is inapplicable, under the Wisconsin statute, to a case of divorce, where the parties are actually living in different jurisdictions; and the fact that the husband’s domicil has been in this State for many years will not enable the wife to sue for a divorce here, if she has continued to live at their former domicil in another State. The statute expressly requiring residence excludes that theory. The plaintiff’s want of residence under the statute is a personal disability, which may be cured, and is matter in abatement and not in bar of the action. Ib. 659.
In contemplation of law the residence of the wife follows that of her husband, and where he has deserted her and gone to another State she may obtain a divorce in such State, although the statute requires a residence of a year to entitle to apply for divorce. Ashbaugh v. Ashbaugh, 17 Ill. 476.
Under a statute requiring of the plaintiff a three-years’ residence a wife is not entitled to apply for a divorce if she resides elsewhere, although the husband resides in the State, on the theory that her husband’s domicil is hers, as it is not so for every purpose; and the maxim that her domicil follows his cannot be applied to give the court jurisdiction. Schonwald v. Schonwald, 2 Jones Eq. 367.
A wife cannot have two domicils in separate States for the purpose of bringing a suit for divorce. Dor the purpose of such suits her *340 domicil is where she actually resides, and she cannot be deemed a resident of the State where her husband is domiciled if she is living elsewhere within the meaning of a statute requiring parties to be resident in order to entitle them to apply for divorce. Jenness v. Jenness, 24 Ind. 355. (Decided on another point.)
As the domicil of a wife follows that of her husband, she is entitled to apply for a divorce in the State where he is domiciled, although the statute provides that “no person shall be allowed to apply for a divorce who has not been a resident of this State for a period of six months immediately preceding such application,” So held, where the husband removed to the State intending to have the wife follow him, and subsequently committed the offense. Kashaw v. Kashaw, 3 Cal. 312.
“ Residence ” required by law to give jurisdiction of a divorce suit is not sustained by taking up an abiding-place for the mere purpose of bringing the suit, although it is continued for the length of time required by law. Whitcomb v. Whitcomb, 46 Iowa, 437.
As used in the divorce laws residence means something more transient in its nature than a domicil, yet always some intent of permanent business or stay. It cannot be acquired by a visit to a State to bring a suit, while the party’s domicil or business is in another State. Way v. Way, 64 Ill. 406.
“ Domiciled inhabitant ” (an expression used in the divorce laws of several States) means no more than a person domiciled within the jurisdiction. It does not require actual residence, at least on the part of a wife who has left her husband for his fault.
An inhabitant is defined to be one who has his domicil in a place, or a fixed residence there. Kennedy v. Ryall, 67 N. Y. 379.
“Inhabitant” as used in New England, and in most if not all the other States, means a domiciled person. The Constitution of Massachusetts contains this clause, “To remove all doubts concerning the meaning of the word ‘ inhabitant ’ in this Constitution, every person shall be considered as an inhabitant, for the purpose of electing and being elected into any office or place within this State, in that town, district, or plantation where he dwelleth or hath his home. Const. of Mass., Part II. c. I. § 2 (II.).
This was explained in the opinions of the justices in 7 Mass. 525 to imply also, by reason of the context, a requirement of citizenship.
But, in subsequent amendments the word “ citizen ” having been inserted in some of the clauses referring to inhabitants and not in others, the justices gave their opinion, “ that the word ‘inhabitant’ is used throughout the 21st article of amendment in its larger and *341 more popular sense as implying domicil only, and not citizenship.” Opin. of justices, 133 Mass. 594.
One who, having an established residence within the State, leaves it temporarily, does not thereby cease to be an inhabitant. Barnet’s Case, 1 Dall. 152, 153.
Legal residence or inhabitancy and domicil, in general, mean the same thing. Crawford v. Wilson, 4 Barb. 504; Lee v. Stanley, 9 How. Pr. 272.
Even “resident ” is naturally understood to apply to domicil, or at least to the place of permanent residence, and not to the place where one is staying as a temporary visitor. See Reeder v. Holcolmb, 105 Mass. 93, 95; S. P., Chariton County v. Moberly, 59 Mo. 238.
And “ residence ” is not terminated by absence for temporary reasons, though prolonged. So held, under the statute as to removing executors who become non-resident. Walker v. Walker, 1 Mo. App. 404, 413.
So held under a statute as to tenure of public office. State ex rel. Daubmann v. City Council of Camden, 39 N. J. L. 57.
So a statute fixing the jurisdiction where the parties “live,” means their domicil. Harteau v. Harteau, 14 Pick. 181.
And absence on a journey does not affect the jurisdiction.
A statute providing that no divorce can be granted for a cause occurring out of the State unless “one of them lived in this State when the cause occurred,” is satisfied if at that time the parties have their domicil in the State. Thus, it was held sufficient when the cause occurred on a journey to another State where they intended to make their domicil, it being decided that the Massachusetts domicil had not ceased. Shaw v. Shaw, 98 Mass. 158.
In all the various connections in which the word “ inhabitant ” is used in the law, it refers to legal relation or status arising from the facts of home and intent, and never to the mere fact of locality of the person. See State v. Ross, 23 N. J. Law, 517, 527; Long v. Brown, 4 Ala. 622; State v. Springfield Township, 6 Ind. 83; Marlborough v. Hebron, 2 Conn. 20.
Under an Indiana statute which did not require the defendant to be a resident,—Held, that a wife who had removed to Indiana from another State might obtain a divorce there, she having become a bona fide citizen and there being no fraud or collusion. Tolen v. Tolen, 2 Blackf. 407.
The New Jersey statute requiring inhabitancy at the time of the desertion, means during the whole period of the three years which is necessary to entitle one to divorce for that cause. Coddington v. Coddington, 20 N. J. Eq. (5 C. E. Green), 263.
*342 [Jurisdiction as affected by the offense.1—The grievance must be one which is a cause of action for divorce by the law of the forum, and was so at the time the grievance occurred; but if the action is brought in the jurisdiction of the common marital domicil, a grievance committed abroad is equally available as one committed within the jurisdiction. See 3 Am. L. Reg. N. S. 193; and Holmes v. Holmes, 4 Lans. 388; rev’g 8 Abb. Pr. N. S. 1; S. C., 57 Barb. 305, where it is also said that the courts have not jurisdiction of an offense committed before the domicil was acquired. See also Dunlop v. Dunlop, 3 Ky. Law Rep. 20.